FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 0 6 2014

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CATHERINE DEW AND STEVEN DEW,          )
HER HUSBAND,                           )
                                       )
        Plaintiffs                     )
                                       )
v.                                     )   Case No. 1:14 cv 1  JLH
                                       )
THE UNITED STATES OF AMERICA,          )
                                       )
        Defendant                      )

This case assigned to District Judge Holmes
and to Magistrate Judge Ray

## COMPLAINT PURSUANT TO THE FEDERAL TORT CLAIMS ACT

Plaintiffs, for their Complaint, state:

1.  This action is brought pursuant to the provisions of the Federal Tort Claims
Act, 28 U.S.C. §1346(b).

2.  Plaintiffs' claims are premised upon medical malpractice arising out of
treatment received by Catherine Dew at the Veterans Administration Hospital in Little
Rock, Arkansas.

3.  At all times relevant to this action, Plaintiffs were residents of Cleburne
County, Arkansas.  Venue is proper, therefore, in this Court pursuant to 28 U.S.C.
§1402(b).

4.  Pursuant to 28 U.S.C. §2401(b) and §2675(a), Plaintiffs were required to submit
a proper administrative claim to the federal agency employing the person whose act or
omission caused the injury.  Pursuant to that requirement, Plaintiffs filed their "Claim for
Damage, Injury, or Death" forms, copies of which are attached hereto, marked Exhibit
"A" and "B", and incorporated herein by reference thereto.  The Department of Veterans

Affairs acknowledged receipt of Plaintiffs' tort claims by letter dated May 31, 2013, a copy of which is attached hereto, marked Exhibit "C" and incorporated herein by reference thereto.  Plaintiffs have now received the final denial of their claim by the Department of Veterans Affairs, dated December 19, 2013, a copy of which is attached hereto, marked Exhibit "D", and incorporated herein by reference thereto.

5.  On September 18, 2012, Catherine Dew ("Catherine") was 54 years old. She entered the Veterans Administration Hospital in Little Rock on that date for the purpose of having a Nissen Fundoplication surgery.  Catherine had undergone this same surgery in 1997 which involved an operation to her esophagus to provide relief for symptoms associated with gastric reflux disease which led to difficulty in swallowing.  In the months prior to September 18, 2012, Catherine had noticed increased heartburn, as well as acid reflux symptoms.  The plan was for the surgery to be repeated upon Catherine to remedy this problem.

6.  On September 18, 2012, Catherine was admitted to the Veterans Administration Hospital in Little Rock for the corrective surgery.  The attending physicians included Dr. Lawrence T. Kim, Dr. Jeffrey Burford, and other residents.

7.  Shortly after the fundoplication surgery was completed, Catherine was found to be bleeding internally.  She was taken back into the operating room and re-opened. At that time, it was discovered that Catherine's spleen had been cut during the esophagus surgery.  Attempts were made to repair the spleen, but they were unsuccessful, leading to the removal of Catherine's spleen on September 18th.

8.  On September 23, 2012, Catherine went into respiratory distress and was sent back to Intensive Care.  A CT Scan was ordered, which revealed that Catherine was

2

experiencing "intraperitoneal free air" – she had unexplained air in her abdomen.

Catherine's abdomen was opened up again, and the cause of the "free air" was

discovered: a nasogastric tube which had been placed in Catherine on September 18th

had torn a hole in her stomach.  Also, at the time of this surgery, Catherine's liver was

found to have two slashes which occurred in one of the September 18th surgeries.

    9.  By the time of the surgery on September 23rd, Catherine was in septic shock.

She had also developed abdominal abscesses (pockets of infected pus in her abdomen),

necrotizing fascititis (an infection in the tissues of the abdomen sometimes referred to

as 'flesh eating bacteria syndrome'), and wound dehiscence of the abdomen (a

rupturing of the surgical wound).

    10. Due to the extent of her injuries associated with her punctured stomach,

Catherine had drains placed in her abdomen in an effort to remove the pus and

infection.  She also developed pneumonia, and had to undergo bronchial washings to

help identify the organisms causing the pneumonia.  She was kept alive with tube

feedings, and had to undergo multiple washouts of the abdominal wound to remove

dead, necrotic tissue.  Finally, her abdominal wound was closed on October 9, 2012,

after she had been forced to lay with her abdomen cut open for eight days.

Additionally, although there was an attempt made to remove Catherine from the vent,

she continued to require ventilator support to live, necessitating the placement of a

tracheotomy on October 15, 2012.

    11.  In addition, as a result of the injuries to her abdomen, Catherine developed

diarrhea, and was started on antibiotics for treatment of a C-Diff infection in her

intestines, which was characterized by horrible bouts of diarrhea caused by the previous

antibiotics which had been necessary to keep Catherine alive.  After 39 days, Catherine

was removed from the ventilator.  She continued to drain pus and fluids from her

stomach until November 13, 2012, on which date the last abdominal drain was removed.

On November 15, 2012, she was transferred back to a regular room after 53 days in ICU.

On November 16, 2012, Catherine was discharged home with a diagnosis of gastric

perforation, followed by wound dehiscence, necrotizing fasciitis, and respiratory failure.

12.   Since her discharge from the VA Hospital on November 16, 2012, Catherine

has been unable to return to her former employment as an apartment manager for

White River Area Agency on Aging.  Based upon the extent of her permanent injuries

associated with the abdominal perforation suffered at the VA Hospital, and ensuing

complications, Catherine will never return to work.  Moreover, due to the extent of her

injuries, Catherine has been left with little or no abdominal muscle and suffers from a

huge abdominal hernia.  Due to the large nature and size of hernia, Catherine will be

permanently disabled.

13.   Due to the hole in Catherine's stomach, and the ensuing contamination, she

is more susceptible to bowel obstructions that may require further surgery, and which

may lead to a break down of the abdominal wall making it permanently weaker and

more susceptible to hernias, and disfigurement.

14.   The injuries of Catherine Dew, as described above, and all damages

associated with these injuries, were directly and proximately caused by the failure of

physicians, nursing staff, and other medical personnel, all of whom were acting as

agents and employees of the Veterans Administration Hospital in Little Rock, to use and

exercise the degree of skill and learning ordinarily possessed and used by members of

the medical profession in good standing, engaged in the practice of medicine, provision of nursing care, or otherwise involved in providing medical care, in the locality in which they practice, or in a similar locality.  As a direct and proximate result of this negligence, Plaintiff Catherine Dew has suffered extensive injuries and damage consisting of, but not limited to, past and future medical expenses; past and future pain, suffering, and mental anguish; a loss of earning and earning capacity; scars, disfigurement, and visible results of her injuries; and her husband, Steven Dew, has suffered a loss of consortium.

15.  The factual occurrences described herein, as well as all of the injuries and damages of Catherine and Steven Dew, her husband, were directly and proximately caused by the negligence of the Veterans' Administration Hospital of Little Rock, acting by and through its agents and employees.  Had the negligence of these Veterans Administration agents and employees not occurred, Catherine and Steven Dew would not have suffered the injuries and damages alleged in this Complaint.

16.  The factual occurrences described herein, as well as all injuries and damages suffered by Catherine and Steven Dew, were directly and proximately caused by the acts and omissions of the United States of America, acting through the Veterans Administration Hospital of Little Rock and its agents and employees, which acts and omissions include, but are not limited to, the following:

(a)     Puncturing Catherine Dew's stomach with an NG tube during a surgery to her esophagus, or in a corrective surgery to remove her spleen, which had been cut during the esophagus surgery;

(b)     Failing to properly and timely diagnose the hole in the stomach, resulting in Catherine suffering sepsis and peritonitis;

(c)     Cutting Catherine's liver during a surgery to her esophagus, or in a surgery to remove her spleen (which was cut during the esophagus surgery);

(d)     Failing to timely diagnose and treat sepsis, leading to peritonitis, wound dehiscence, abscesses, and necrotizing fasciitis.

17.  As a direct and proximate result of the factual occurrences described herein, Plaintiffs suffered damages far in excess of the amount necessary to confer jurisdiction in Federal District Court in diversity of citizenship cases.

WHEREFORE, the Plaintiffs, Catherine Dew and Steven Dew, her Husband, respectfully request that they be granted judgment from and against the Defendant in an amount in excess of that necessary to confer subject matter jurisdiction in Federal District Court in diversity of citizenship cases; and that they recover their costs herein.

CATHERINE AND STEVEN DEW,
Plaintiffs

By:_____
Scott Davidson
Davidson Law Firm
P.O. Box 4046
Batesville, AR 72503
(870)612-5574
Arkansas Bar No. 88090

# CLAIM FOR DAMAGE, INJURY, OR DEATH

FORM APPROVED
OMB NO. 1105-0008

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Department of Veterans Affairs<br>2200 Fort Roots Drive, Bldg. 5<br>North Little Rock, AR 72114 | Catherine Dew<br>4 Dogwood Lane<br>Higden, AR 72067 |

| 3. TYPE OF EMPLOYMENT | 4 DATE OF BIRTH | 5 MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 07/12/1958 | Married | 09/18/2012  & continuing | See VA med records |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

See "Addendum to Claim for Damage, Injury or Death" attached hereto.

## 9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED (See instructions on reverse side).

N/A

## 10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See "Addendum to Claim for Damage, Injury or Death" attached hereto.

## 11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See "Addendum to Claim for Damage, Injury or Death" attached hereto. | |

12. (See instructions on reverse). AMOUNT OF CLAIM (in dollars)

| 12a PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 0.00 | 1,900,000 | 0.00 | 1,900,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a SIGNATURE OF CLAIMANT (See instructions on reverse side) | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14 DATE OF SIGNATURE |
|---|---|---|
| Scott Davidson, Attorney | 870-612-5574 | 5/24/13 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT "A"

INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

| 15. Do you carry accident Insurance?  ☒ Yes  If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☐ No |
|---|

Tricare                                    Policy #432212344
P.O. Box 7032
Camden, SC  29020

| 16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☒ Yes  ☐ No | 17. If deductible, state amount. |
|---|---|

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

Claims have been paid.

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code)   ☐ No

N/A

---

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14.  Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT.  THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a)  In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b)  In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c)  In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d)  Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
 A.  *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

 B.  *Principal Purpose:*  The information requested is to be used in evaluating claims.
 C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information
 D.  *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

## ADDENDUM TO CLAIM FOR DAMAGE, INJURY OR DEATH FORM 95-109

No.'s 8 and 10:

Catherine Dew ("Catherine") was 54 years old when she entered Veterans Administration Hospital in Little Rock, Arkansas.  An Air Force veteran of 20 years, she was married to Steven Eugene Dew ("Steve"), who served in the Navy 10 years and then in the Air Force Reserve for 12 years.

At the time of her hospitalization on September 18, 2012, Catherine worked for White River Area Agency on Aging as a housing manager at Renegar Apartments in Quitman, Arkansas.  Catherine had worked in that position for almost two years.  Prior to that employment, Catherine had worked as the administrative assistant for the Department Chief of the Pathology and Laboratory Department at the VA Medical Center in Little Rock.  It was Catherine's intention to continue to work until she reached retirement age.

Catherine enjoyed good health which did not restrict her activities.  She could basically do anything she wanted.

Catherine had a history of a Nissen fundoplication surgery done in 1997.  This surgery to Catherine's esophagus was done to provide relief for symptoms associated with gastric reflux disease which led to difficulty in swallowing.  In the last several months prior to September 18, 2012, Catherine had noticed increased heartburn, as well as acid reflux symptoms.  In 2010, a test had shown that the previous surgery was no longer working.  The plan for Catherine was to repeat the Nissen fundoplication surgery which had been done in 1997.

On September 18, 2012, Catherine was admitted to the VA Hospital in Little Rock for the corrective surgery.  It was anticipated that Catherine's hospital stay would be for one week. The attending physician for the surgery was Dr. Lawrence T. Kim, with Dr. Kim and Dr. Jeffrey Burford serving as operating surgeons.

Shortly after the fundoplication surgery was completed, Catherine was found to be bleeding internally.  She was taken back into the operating room and reopened.  At that time, it was discovered that Catherine's spleen had been sliced during the esophagus surgery.  Attempts were made to repair the spleen, but they were unsuccessful.  Eventually, a splenectomy was performed, and her spleen was removed. After the splenectomy, Catherine was sent to ICU.  On September 19, 2012, she was transferred from ICU to a regular room.

On September 23rd, Catherine went into respiratory distress, and was sent back to Intensive Care.  A CT Scan was ordered, which revealed that Catherine was experiencing "intraperitoneal free air" – she had unexplained air in her abdomen.  Catherine's abdomen was opened up again and the cause of the "free air" was discovered: a nasogastric tube which had been placed in Catherine on September 18th had torn a hole

in her stomach.  In fact, the nasogastric tube was sticking through the hole in the stomach when Catherine was opened up in surgery.   Also, Catherine's liver was found to have two slashes which had occurred in one of the September 18th surgeries.

By the time of this surgery on September 23rd, Catherine was in septic shock.  Her body had been poisoned from leakage associated with the torn hole in her stomach.  As a result, she developed abdominal abscesses (pockets of infected pus in her abdomen), necrotizing fascitis (infection in the tissues of the abdomen sometimes referred to as "flesh eating bacteria syndrome"), and wound dehiscence of the abdomen (a rupturing of the surgical wound).  Drains were placed in an effort to drain the pus and infection, and a wound VAC was placed over the ruptured surgical wound to assist with healing.  Catherine had sepsis, or generalized poisoning in her system, due to the infection in her abdomen.  This infection developed due to the hole which had been torn in her stomach by the nasograstic tube leaking stomach fluids into her abdomen.  Catherine developed pneumonia, and had to undergo bronchial washings to help identify the organisms causing the pneumonia.  She had a catheter placed in her to remove her urine, and was unable to control her bowels due to her level of sedation.   She received IV antibiotics for treatment of her sepsis, abdominal abscesses, and pneumonia.  She was kept alive with tube feedings.  She was critically ill and near death.

Catherine had to undergo multiple washouts of the abdominal wound to remove dead, necrotic tissue.  Finally, her abdominal wound was closed by Dr. Parnell on October 9, 2012.  She had been forced to lay with her abdomen cut open for 8 days.  There was an attempt made to wean Catherine from the vent, but those attempts were unsuccessful.  She continued to require ventilator support to live, so a trach was placed on October 15, 2012.

Catherine developed diarrhea, and was started on antibiotics for treatment of a C-Diff infection in her intestines, which is characterized by horrible bouts of diarrhea caused by the previous antibiotics which had been necessary to keep Catherine alive.  She also suffered through urinary tract infections.  She was unable to breathe on her own until October 31, 2012, on which date the ventilator was removed.  The ventilator had kept Catherine alive for 39 days.  She continued to drain pus and fluids from her stomach until November 13, 2012, on which date the last abdominal drain was removed.  On November 15, 2012, she was transferred back to the floor after 53 days in ICU.  On November 16, 2012, Catherine was discharged home in stable condition. Catherine's discharge diagnosis was gastric perforation, followed by wound dehiscence, necrotizing fascitis, and respiratory failure.  Following discharge, Catherine was under home health care for six weeks.  Her home health care included assistance in providing wound care.

As preciously noted, Catherine was an apartment manager for White River Area Agency on Aging at the time of her hospitalization on September 18, 2012.  Catherine was off work from September 18, 2012 to February 1, 2013.  At that time, Catherine was released to return to work with "light duty restrictions."  According to Dr. Clifton Parnell, she could return to work with light duty restrictions which meant she could not lift more than ten pounds and could not stand or walk for long periods of time.  (See Dr. Parnell's

note of 1/16/13, attached as Exhibit "A".)  Catherine attempted to return to work, but could not perform even light job duties, and was removed from work on February 22, 2013.

When the hole was ripped in Catherine's stomach by the nasogastric tube, she was beginning a downhill path that would ultimately and directly lead to her not being left with any abdominal muscle and suffering from a huge abdominal hernia.  It had been hoped that at some point, Catherine would be able to have a corrective surgery to attempt to repair this deformity.  (See Dr. Bivins' office note of 3/25/13 attached as Exhibit "B".)  Unfortunately, Dr. Mark Gibbs of the Surgical Clinic of Central Arkansas has warned otherwise: "Because of the extensive nature of her surgeries, and due to the large nature of her hernia, I feel that attempting to repair this presents too high of a risk for her." (See Dr. Gibbs' letter of 5/14/13 attached as Exhibit "C".)

Based on the permanency of her condition, it will never be advisable for Catherine to lift more than ten pounds, nor will she be able to stand or walk for long periods of time.  (See Exhibit "A", note from Dr. Parnell.)  Accordingly, she will never return to her former work as an apartment manager, where she was earning approximately $10,920 per year.  (See letter from White River Area Agency on Aging dated 5/21/13 attached as Exhibit "D".)  In view of her age and restrictions, Catherine Dew will probably never work again.  It had been her intention to continue working until at least the age of 62.

Catherine's ongoing problems caused by the medical malpractice alleged in this claim also include the following:

(a)   She is basically left without abdominal muscles.  Due to this loss of muscles, and the large number of surgeries she has had, she experienced a hernia which cannot be repaired;

(b)   She has nerve damage on back of both of her heels due to having to lay in bed for extended periods of time;

(c)   She has continuous back pain because the abdominal hernia causes all her organs to pull forward;

(d)   She experienced muscular atrophy caused by laying in bed so long, and, with no abdominal muscles, she cannot exercise to gain strength;

(e)   She has experienced hair loss due to all the medications she had to be on;

(f)   She has experienced tremors which may be permanent;

(g)   Heartburn is back because the corrective surgery apparently did not take, and she cannot have it repaired again.

In addition to her wage loss and earning capacity issues, Catherine's quality of life has been drastically altered.  By way of example, Catherine is not able to clean her own house now as she used to, and has had to hire a housekeeper.  She can't push a vacuum, and can't bend to clean bathrooms.  She used to do their yardwork and mowing, which she can no longer do. She used to enjoy gardening, and is unable to do this now.  She cannot make her own bed.  Catherine used to cook, but now she can only

stand long enough to make one dish in the kitchen.  She can only stand long enough to iron one of Steve's work shirts at a time, then has to sit and rest.  She can't carry in her groceries.  She can no longer enjoy doing her own pedicures, as she did before, as it requires bending.  She used to do her own dog grooming, which she is no longer able to do.  She used to enjoy doing remodeling projects around her house, such as painting, and she can't physically do this anymore.  She has also suffered socially, as she is not able to get out and go places easily as she has in the past.  She can't drive for extended times.  She has to always be extremely cautious of her belly so that she doesn't hit it on anything. Eating is no longer enjoyable anymore for her.  To the contrary, it is discomforting.  She will likely have to take pain medication for the rest of her life.

Additionally, Steven Dew, as Catherine's husband, has suffered a loss of consortium and companionship as a result of his wife's life-altering injuries.

It is the contention of Catherine and Steve Dew that the damages suffered by them are the result of medical negligence on the part of the Veterans Administration hospital in Little Rock.  Particularly, it is their contention that the following acts and omissions constituted medical negligence and proximately caused the injuries complained of herein:

(a)     A resident surgeon or surgeons, under the supposed watch of an attending physician, cut Catherine Dew's liver during a surgery to her esophagus, or in a surgery to remove her spleen (which was cut during the esophagus surgery);

(b)     A resident surgeon or surgeons, under the supposed watch of an attending physician, perforated Catherine Dew's stomach with an NG Tube during a surgery to her esophagus, or in a surgery to remove her spleen (which was cut during the esophagus surgery);

(c)     This perforation was not diagnosed or treated in a timely manner, resulting in Catherine suffering sepsis and peritonitis;

(d)     That as a direct and proximate result of this perforation and failure to timely diagnose and treat, Catherine's sepsis led to wound dehiscence, abscesses, and necrotizing fascitis;

(e)     That as a direct and proximate result of this occurrence, Catherine underwent 53 days of Intensive Care hospitalization and treatment;

(f)     That as a direct and proximate result of this occurrence, Catherine Dew almost died, and has suffered a permanent diminution in the quality of her life;

(g)     That as a direct and proximate result of this occurrence, Catherine Dew has suffered a loss of earnings and earning capacity as more particularly described in Exhibit "A" hereto;

(h)     That as a direct and proximate result of this occurrence, Catherine Dew will never work again;

Claimants stand ready to support all claims of medical negligence through the testimony of medical experts.

No. 11:        In addition to Catherine and Steven Dew, additional witnesses will include
               agents and employees of the VA Hospital in Little Rock, Arkansas, as more
               particularly described in the medical records of Catherine Dew.



# DEPARTMENT OF VETERANS AFFAIRS
## Central Arkansas Veterans Healthcare System
### 4300 West 7th Street
### Little Rock AR 72205

## GENERAL SURGERY CLINIC/ 501-257-6910

EXCUSED ABSENCE/ RETURN TO WORK-SCHOOL

NAME OF PATIENT: *Catherine Dew*

DATE: *Jan 16, 2013*

NAME OF EXCUSED PERSON: *Catherine Dew*

EXPLANATION:
*Ms. Dew was seen today by myself.
She may return to work Feb 1, 2013
but c̄ light duty restriction. She may
not lift greater than 10 pounds & should
not stand or walk for long periods of time.*

PHYSICIAN'S SIGNATURE:

*[signature]*

*1-16-2013*

**EXHIBIT A**

Bivins Family Medicine
101 Ely Drive, P.O. Box 730
Heber Springs, AR  72543
(501) 362-6000

DEW, CATHERINE          7-12-1958          54
18056

**PAST HISTORY:**

**FAMILY HISTORY:**

**SOCIAL HISTORY: ***

**CURRENT MEDICATIONS:**1)  Estrace  0.5 mg q day
2)  loratadine  10 mg q day
3)  Nasacort  2 sprays each nostril once a day
4)  vitamin D  200 mg q day
5)  omeprazole  20 mg q day
6)  Zofran  8 mg q 8 hours as needed nausea

**CURRENT DIAGNOSIS:**

**ALLERGIES:**1)  Talwin
2)  amoxicillin
3)  Stadol
4)  Feldene

**LAB RESULTS SINCE LAST VISIT:**
**TEST ORDERED SINCE LAST VISIT:**none

Pulse: 76 sitting regular.
BP: 162/102 sitting right arm standard cuff.
Resp: 18.
Weight: 147 lbs. (66.8 kg).
Pain: 0.
Chief Complaint: wants second opinion on VA r/t issues

S:had surgery for hiatal hernia and redo nissen. She had abdominal swelling after surgery and then taken back to or and found to thve a lacerated spleen. This was removed and sent back to SICU. She then had swelling again and was taken to and found to have a lacerated liver. this was repaired and she subsequently developed and abdominal infectioent n. she then had cardiac arrest and was placed on a ventilator. The abdomen incision was allowed to closed by secondary intention. she spent a total of 58 days in the intensive care unit. . She has no abdominal muscle left. She has a binder she wears at all times and has to sleep in it. Was told by second surgeon that it would ba year before she could have further surgery to repair the problem .

O: has no abdominal muscle.

A:incisional hernia

**EXHIBIT B**  ⁴

P:will watch for now   i feel she needs to let the scar tissue  mature  and this discuss further surgery. I did offer referral to another surgeon but she wants to wait for now.

**Return As Needed**

**Will drop in in 2 weeks to recheck Blood Pressure**

Electronically signed by: Frank Bivins on 3-25-2013 at 8:11:46 P.M..

This fax may contain legally privileged Health Information and is intended for the sole use of the recipient individual. You are hereby notified that the disclosure, or other unlawful use of this health information is prohibited.

If you received this fax in error visit www.athenahealth.com/NotMyFax to notify the sender and confirm that the information will be destroyed. If you do not have internet access, please call 1-888-482-8436 to notify the sender and confirm that the information will be destroyed. [ID:769441-H-696]



# THE SURGICAL CLINIC
## OF CENTRAL ARKANSAS

9500 KANIS ROAD • SUITE 501 • LITTLE ROCK, ARKANSAS 72205
(501) 227-9080 • FAX (501) 227-0410

**GENERAL, THORACIC, VASCULAR, and LAPAROSCOPIC SURGERY**
Hugh F. Barnett, M.D., F.A.C.S., F.A.C.C.P.
Chris M. Cate, M.D., F.A.C.S.
John F. Dunn, M.D., F.A.C.S.
Gregory J. Engstrom, M.D.
Jon D. Fuller, M.D., F.A.C.S.
Mark R. Gibbs, M.D., F.A.C.S.
John C. Jones, M.D., F.A.C.S.
Peter J. Kim, M.D.
A. Scott Marotti, M.D., F.A.C.S.
Patrick N. Owen, M.D., F.A.C.S.
Eric M. Paul, M.D.
Michael M. Pollock, M.D., F.A.C.S.
Dennis J. Tlehko, M.D., F.A.C.S., F.A.C.C.P.
W. Everett Tucker, M.D., F.A.C.S.

**BREAST SURGERY**
James E. Hagans, III, M.D., F.S.S.O.
(501) 227-8166

**ARKADELPHIA**
J.D. Fuller, M.D., F.A.C.S.
2910 Cypress Drive
Arkadelphia, AR 71923
(501) 227-9080

**CLINTON**
Steve P. Schoettle, M.D., F.A.C.S.
2826 Hwy 65 South, Suite 205
Clinton, AR 72031
(501) 745-9403

**HEBER SPRINGS**
Dan G. Lister, M.D., F.A.C.S.
1713 West Main Street
Heber Springs, AR 72543
(501) 253-2026

**SHERWOOD**
Dan G. Lister, M.D., F.A.C.S.
2215 Wildwood, Suite 200
Sherwood, AR 72120
(501) 553-7373

**STUTTGART**
John F. Dunn, M.D., F.A.C.S.
Gregory J. Engstrom, M.D.
Stuttgart, AR 72160
(870) 674-6335

May 14, 2013

Franklin G. Bivins, M.D.
Heber Springs, AR. 72543

RE:     Catherine Dew
DOB:   07/12/1958

Dear Dr. Bivins:

I saw your nice patient, Catherine Dew, in the office today. As you know, she has an extremely large ventral hernia.

Her past surgical history is extensive with at least seven major abdominal surgeries, most recently in 2012 at the V. A. Hospital.

Because of the extensive nature of her surgeries and due to the large nature of her hernia, I feel that attempting to repair this presents too high of a risk for her. I feel the complication rate would be high and the risk of recurrence of the hernia would be extremely high as well. She is not having any obstructive symptoms and the likelihood of incarceration or strangulation is low.

She and I have elected not to pursue surgical repair. I did offer to refer her to Dr. Cone at UAMS as another opinion, but she did not want to do this at this time.

If you have any questions, please do not hesitate to contact me, but thank you for allowing me to see this very nice patient.

Sincerely,

*Mark R. Gibbs M.D.*

Electronically Signed by: MARK R GIBBS, MD
MRG/jm

---

THE SURGICAL CLINIC OF CENTRAL ARKANSAS                    Dew, Catherine (ID: 432872), DOB: 07/12/1958

EXHIBIT C                    COPY

# WHITE RIVER
## Area Agency on Aging

3998 Harrison Street • Post Office Box 2637 • Batesville, Arkansas 72503
870-612-3000 • 1-800-382-3205 • Fax 870-793-3971
www.wraaa.com

May 21, 2013

Davidson Law Firm
P.O. Box 4046
Batesville, AR 72503

RE: Catherine Dew

Dear Sir/Madam,

As requested, the following information is provided on Ms. Catherine Dew.

Ms. Dew was scheduled to work 4 hours per day, Monday through Friday. She missed 90 days of work from September 18, 2012 until her resignation on February 22, 2013. At that time, she earned $10.50 per hour. Since she was a part time employee she did not earn any benefits.

If I can be of further assistance, please feel free to contact me.

Sincerely,

Leigh Ann Chronister
Human Resources Director



Area Served: Cleburne, Fulton, Independence, Izard, Jackson, Sharp, Stone, Van Buren, White and Woodruff Counties.
White River Area Agency on Aging, Inc. is an equal opportunity provider, and employer.
A 501 (c)(3) Tax Exempt Non-Profit Organization



EXHIBIT D

# CLAIM FOR DAMAGE, INJURY, OR DEATH

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

2688dd80db770b4 page 19 of 33

APPROVED
OMB NO. 1105-0008

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any (See instructions on reverse) Number, Street, City, State and Zip code. |
|---|---|
| Department of Veterans Affairs<br>2200 Fort Roots Drive, Bldg. 5<br>North Little Rock, AR 72114 | Steven Dew<br>4 Dogwood Lane<br>Higden, AR 72067 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH<br>07/03/1958 | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT<br>09/18/2012 & continuing | 7. TIME (A.M. OR P.M.)<br>See VA med records |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof Use additional pages if necessary)

See "Addendum to Claim for Damage, Injury or Death" attached hereto.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N/A

| 10 | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See "Addendum to Claim for Damage, Injury or Death" attached hereto.

| 11 | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| See "Addendum to Claim for Damage, Injury or Death" attached hereto. | | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (In dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| | 100,000.00 | | 100,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side).<br>_Seth Davidson, Attorney_ | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>870-612-5574 | 14 DATE OF SIGNATURE<br>5/24/13 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING<br>FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT<br>CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT "B"

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

| 15. Do you carry accident Insurance?  ☒ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No |
|---|

Tricare                    Policy #432212344
P.O. Box 7032
Camden, SC  29020

| 16  Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☒ Yes   ☐ No | 17  If deductible, state amount. |
|---|---|

18  If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

Claims have been paid.

| 19  Do you carry public liability and property damage insurance?   ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code)   ☐ No |
|---|

N/A

---

### INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

#### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14  Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

### PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A.  *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C  301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:*  The information requested is to be used in evaluating claims.
C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D  *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

### PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

**ADDENDUM TO CLAIM FOR DAMAGE, INJURY OR DEATH FORM 95-109**

No.'s 8 and 10:

Catherine Dew ("Catherine") was 54 years old when she entered Veterans Administration Hospital in Little Rock, Arkansas.  An Air Force veteran of 20 years, she was married to Steven Eugene Dew ("Steve"), who served in the Navy 10 years and then in the Air Force Reserve for 12 years.

At the time of her hospitalization on September 18, 2012, Catherine worked for White River Area Agency on Aging as a housing manager at Renegar Apartments in Quitman, Arkansas.  Catherine had worked in that position for almost two years.  Prior to that employment, Catherine had worked as the administrative assistant for the Department Chief of the Pathology and Laboratory Department at the VA Medical Center in Little Rock.  It was Catherine's intention to continue to work until she reached retirement age.

Catherine enjoyed good health which did not restrict her activities.  She could basically do anything she wanted.

Catherine had a history of a Nissen fundoplication surgery done in 1997.  This surgery to Catherine's esophagus was done to provide relief for symptoms associated with gastric reflux disease which led to difficulty in swallowing.  In the last several months prior to September 18, 2012, Catherine had noticed increased heartburn, as well as acid reflux symptoms.  In 2010, a test had shown that the previous surgery was no longer working.  The plan for Catherine was to repeat the Nissen fundoplication surgery which had been done in 1997.

On September 18, 2012, Catherine was admitted to the VA Hospital in Little Rock for the corrective surgery.  It was anticipated that Catherine's hospital stay would be for one week. The attending physician for the surgery was Dr. Lawrence T. Kim, with Dr. Kim and Dr. Jeffrey Burford serving as operating surgeons.

Shortly after the fundoplication surgery was completed, Catherine was found to be bleeding internally.  She was taken back into the operating room and reopened.  At that time, it was discovered that Catherine's spleen had been sliced during the esophagus surgery.  Attempts were made to repair the spleen, but they were unsuccessful.  Eventually, a splenectomy was performed, and her spleen was removed. After the splenectomy, Catherine was sent to ICU.  On September 19, 2012, she was transferred from ICU to a regular room.

On September 23rd, Catherine went into respiratory distress, and was sent back to Intensive Care.  A CT Scan was ordered, which revealed that Catherine was experiencing "intraperitoneal free air" – she had unexplained air in her abdomen.  Catherine's abdomen was opened up again and the cause of the "free air" was discovered: a nasogastric tube which had been placed in Catherine on September 18th had torn a hole

in her stomach.  In fact, the nasogastric tube was sticking through the hole in the stomach when Catherine was opened up in surgery.   Also, Catherine's liver was found to have two slashes which had occurred in one of the September 18th surgeries.

By the time of this surgery on September 23rd, Catherine was in septic shock.  Her body had been poisoned from leakage associated with the torn hole in her stomach.  As a result, she developed abdominal abscesses (pockets of infected pus in her abdomen), necrotizing fasciitis (infection in the tissues of the abdomen sometimes referred to as "flesh eating bacteria syndrome"), and wound dehiscence of the abdomen (a rupturing of the surgical wound).  Drains were placed in an effort to drain the pus and infection, and a wound VAC was placed over the ruptured surgical wound to assist with healing. Catherine had sepsis, or generalized poisoning in her system, due to the infection in her abdomen.  This infection developed due to the hole which had been torn in her stomach by the nasograstic tube leaking stomach fluids into her abdomen.  Catherine developed pneumonia, and had to undergo bronchial washings to help identify the organisms causing the pneumonia.  She had a catheter placed in her to remove her urine, and was unable to control her bowels due to her level of sedation.   She received IV antibiotics for treatment of her sepsis, abdominal abscesses, and pneumonia.  She was kept alive with tube feedings.  She was critically ill and near death.

Catherine had to undergo multiple washouts of the abdominal wound to remove dead, necrotic tissue.  Finally, her abdominal wound was closed by Dr. Parnell on October 9, 2012.  She had been forced to lay with her abdomen cut open for 8 days. There was an attempt made to wean Catherine from the vent, but those attempts were unsuccessful.  She continued to require ventilator support to live, so a trach was placed on October 15, 2012.

Catherine developed diarrhea, and was started on antibiotics for treatment of a C-Diff infection in her intestines, which is characterized by horrible bouts of diarrhea caused by the previous antibiotics which had been necessary to keep Catherine alive. She also suffered through urinary tract infections.  She was unable to breathe on her own until October 31, 2012, on which date the ventilator was removed.  The ventilator had kept Catherine alive for 39 days.  She continued to drain pus and fluids from her stomach until November 13, 2012, on which date the last abdominal drain was removed. On November 15, 2012, she was transferred back to the floor after 53 days in ICU.  On November 16, 2012, Catherine was discharged home in stable condition. Catherine's discharge diagnosis was gastric perforation, followed by wound dehiscence, necrotizing fascitis, and respiratory failure.  Following discharge, Catherine was under home health care for six weeks.  Her home health care included assistance in providing wound care.

As preciously noted, Catherine was an apartment manager for White River Area Agency on Aging at the time of her hospitalization on September 18, 2012.  Catherine was off work from September 18, 2012 to February 1, 2013.  At that time, Catherine was released to return to work with "light duty restrictions."  According to Dr. Clifton Parnell, she could return to work with light duty restrictions which meant she could not lift more than ten pounds and could not stand or walk for long periods of time.  (See Dr. Parnell's

note of 1/16/13, attached as Exhibit "A".)  Catherine attempted to return to work, but could not perform even light job duties, and was removed from work on February 22, 2013.

When the hole was ripped in Catherine's stomach by the nasogastric tube, she was beginning a downhill path that would ultimately and directly lead to her not being left with any abdominal muscle and suffering from a huge abdominal hernia.  It had been hoped that at some point, Catherine would be able to have a corrective surgery to attempt to repair this deformity.  (See Dr. Bivins' office note of 3/25/13 attached as Exhibit "B".)  Unfortunately, Dr. Mark Gibbs of the Surgical Clinic of Central Arkansas has warned otherwise: "Because of the extensive nature of her surgeries, and due to the large nature of her hernia, I feel that attempting to repair this presents too high of a risk for her."  (See Dr. Gibbs' letter of 5/14/13 attached as Exhibit "C".)

Based on the permanency of her condition, it will never be advisable for Catherine to lift more than ten pounds, nor will she be able to stand or walk for long periods of time.  (See Exhibit "A", note from Dr. Parnell.)  Accordingly, she will never return to her former work as an apartment manager, where she was earning approximately $10,920 per year.  (See letter from White River Area Agency on Aging dated 5/21/13 attached as Exhibit "D".)  In view of her age and restrictions, Catherine Dew will probably never work again.  It had been her intention to continue working until at least the age of 62.

Catherine's ongoing problems caused by the medical malpractice alleged in this claim also include the following:

(a)     She is basically left without abdominal muscles.  Due to this loss of muscles, and the large number of surgeries she has had, she experienced a hernia which cannot be repaired;

(b)     She has nerve damage on back of both of her heels due to having to lay in bed for extended periods of time;

(c)     She has continuous back pain because the abdominal hernia causes all her organs to pull forward;

(d)     She experienced muscular atrophy caused by laying in bed so long, and, with no abdominal muscles, she cannot exercise to gain strength;

(e)     She has experienced hair loss due to all the medications she had to be on;

(f)     She has experienced tremors which may be permanent;

(g)     Heartburn is back because the corrective surgery apparently did not take, and she cannot have it repaired again.

In addition to her wage loss and earning capacity issues, Catherine's quality of life has been drastically altered.  By way of example, Catherine is not able to clean her own house now as she used to, and has had to hire a housekeeper.  She can't push a vacuum, and can't bend to clean bathrooms.  She used to do their yardwork and mowing, which she can no longer do. She used to enjoy gardening, and is unable to do this now.  She cannot make her own bed.  Catherine used to cook, but now she can only

stand long enough to make one dish in the kitchen.  She can only stand long enough to iron one of Steve's work shirts at a time, then has to sit and rest.  She can't carry in her groceries.  She can no longer enjoy doing her own pedicures, as she did before, as it requires bending.  She used to do her own dog grooming, which she is no longer able to do.  She used to enjoy doing remodeling projects around her house, such as painting, and she can't physically do this anymore.  She has also suffered socially, as she is not able to get out and go places easily as she has in the past.  She can't drive for extended times.  She has to always be extremely cautious of her belly so that she doesn't hit it on anything. Eating is no longer enjoyable anymore for her.  To the contrary, it is discomforting.  She will likely have to take pain medication for the rest of her life.

Additionally, Steven Dew, as Catherine's husband, has suffered a loss of consortium and companionship as a result of his wife's life-altering injuries.

It is the contention of Catherine and Steve Dew that the damages suffered by them are the result of medical negligence on the part of the Veterans Administration hospital in Little Rock.  Particularly, it is their contention that the following acts and omissions constituted medical negligence and proximately caused the injuries complained of herein:

(a)  A resident surgeon or surgeons, under the supposed watch of an attending physician, cut Catherine Dew's liver during a surgery to her esophagus, or in a surgery to remove her spleen (which was cut during the esophagus surgery);

(b)  A resident surgeon or surgeons, under the supposed watch of an attending physician, perforated Catherine Dew's stomach with an NG Tube during a surgery to her esophagus, or in a surgery to remove her spleen (which was cut during the esophagus surgery);

(c)  This perforation was not diagnosed or treated in a timely manner, resulting in Catherine suffering sepsis and peritonitis;

(d)  That as a direct and proximate result of this perforation and failure to timely diagnose and treat, Catherine's sepsis led to wound dehiscence, abscesses, and necrotizing fasciitis;

(e)  That as a direct and proximate result of this occurrence, Catherine underwent 53 days of Intensive Care hospitalization and treatment;

(f)  That as a direct and proximate result of this occurrence, Catherine Dew almost died, and has suffered a permanent diminution in the quality of her life;

(g)  That as a direct and proximate result of this occurrence, Catherine Dew has suffered a loss of earnings and earning capacity as more particularly described in Exhibit "A" hereto;

(h)  That as a direct and proximate result of this occurrence, Catherine Dew will never work again;

Claimants stand ready to support all claims of medical negligence through the testimony of medical experts.

No. 11:        In addition to Catherine and Steven Dew, additional witnesses will include agents and employees of the VA Hospital in Little Rock, Arkansas, as more particularly described in the medical records of Catherine Dew.



## DEPARTMENT OF VETERANS AFFAIRS
### Central Arkansas Veterans Healthcare System
#### 4300 West 7th Street
### Little Rock AR 72205


## GENERAL SURGERY CLINIC/ 501-257-6910


EXCUSED ABSENCE/ RETURN TO WORK-SCHOOL


NAME OF PATIENT: *Catherine Dew*

DATE: *Jan 16, 2013*

NAME OF EXCUSED PERSON: *Catherine Dew*


EXPLANATION:
*Ms. Dew was seen today by myself. She may return to work Feb 1, 2013 but with light duty restriction. She may not lift greater than 10 pounds + should not stand or walk for long periods of time.*


PHYSICIAN'S SIGNATURE:

*1-16-2013*


**EXHIBIT A**

Bivins Family Medicine
101 Ely Drive, P.O. Box 730
Heber Springs, AR  72543
(501) 362-6000


DEW, CATHERINE          7-12-1958          54
18056

**PAST HISTORY:**

**FAMILY HISTORY:**

**SOCIAL HISTORY: \***

**CURRENT MEDICATIONS:1)**  Estrace  0.5 mg q day
2)  loratadine  10 mg q day
3)  Nasacort  2 sprays each nostril once a day
4)  vitamin D  200 mg q day
5)  omeprazole  20 mg q day
6)  Zofran  8 mg q 8 hours as needed nausea


**CURRENT DIAGNOSIS:**

**ALLERGIES:1)  Talwin**
**2) amoxicillin**
**3) Stadol**
**4) Feldene**


**LAB RESULTS SINCE LAST VISIT:**
**TEST ORDERED SINCE LAST VISIT:none**

Pulse: 76 sitting regular.
BP: 162/102 sitting right arm standard cuff.
Resp: 18.
Weight: 147 lbs. (66.8 kg).
Pain: 0.
Chief Complaint: wants second opinion on VA r/t issues


S:had surgery for hiatal hernia and redo nissen. She had abdominal swelling after surgery and then taken back to or and found to thve a lacerated spleen. This was removed and sent back to SICU.  She then had swelling again and was taken to and found to have a lacerated liver.  this was repaired and she subsequently developed and abdominal infectioent n.  she then had cardiac arrest and was placed on a ventilator,  The abdomen incision was allowed to closed by secondary intention.   she spent a total of 58 days in the intensive care unit. .  She has no abdominal muscle left. She has a binder she wears at all times and has to sleep in it. Was told by second surgeon that it would ba year before she could have further surgery to repair the problem .

O: has no abdominal muscle.

A:incisional hernia

EXHIBIT B

Return As Needed
Will drop in in 2 weeks to recheck Blood Pressure

Electronically signed by: Frank Bivins on 3-25-2013 at 8:11:46 P.M..

This fax may contain legally privileged health information and is intended for the sole use of the intended recipient. You are hereby notified that any disclosure, copying, or other unlawful use of this health information is prohibited.

If you received this fax in error visit www.athenahealth.com/NotMyFax to notify the sender and confirm that the information will be destroyed. If you do not have internet access, please call 1-888-482-8436 to notify the sender and confirm that the information will be destroyed. [ID:789441-H-896]



# THE SURGICAL CLINIC
## OF CENTRAL ARKANSAS

9500 KANIS ROAD • SUITE 501 • LITTLE ROCK, ARKANSAS 72205
(501) 227-9080 • FAX (501) 227-0410

**GENERAL, THORACIC,
VASCULAR, and LAPAROSCOPIC
SURGERY**
Hugh F. Burnett, M.D., F.A.C.S.,
F.A.C.C.P.
Chris M. Cate, M.D., F.A.C.S.
John F. Dunn, M.D., F.A.C.S.
Gregory J. Engstrom, M.D.
Joe D. Fuller, M.D., F.A.C.S.
Mark R. Gibbs, M.D., F.A.C.S.
John C. Jones, M.D., F.A.C.S.
Peter J. Kim, M.D.
A. Scott Martzt, M.D., F.A.C.S.
Patrick N. Osan, M.D., F.A.C.S.
Eric M. Paul, M.D.
Michael M. Pollock, M.D., F.A.C.S.
Dennis J. Tishko, M.D., F.A.C.S.,
F.A.C.C.P.
W. Everett Tucker, M.D., F.A.C.S.

**BREAST SURGERY**
James E. Hagans, III, M.D., F.S.S.O.
(501) 227-8166

**ARKADELPHIA**
J.D. Fuller, M.D., F.A.C.S.
2910 Cypress Drive
Arkadelphia, AR 71923
(501) 227-9080

**CLINTON**
Steve P. Schoettle, M.D., F.A.C.S.
2526 Hwy 65 South, Suite 205
Clinton, AR 72031
(501) 745-0403

**HEBER SPRINGS**
Dan G. Lister, M.D., F.A.C.S.
1713 West Main Street
Heber Springs, AR 72543
(501) 250-2020

**SHERWOOD**
Dan G. Lister, M.D., F.A.C.S.
2215 Wildwood, Suite 200
Sherwood, AR 72120
(501) 552-7373

**STUTTGART**
John F. Dunn, M.D., F.A.C.S.
Gregory J. Engstrom, M.D.
Stuttgart, AR 72160
(870) 674-6335

May 14, 2013

Franklin G. Bivins, M.D.
Heber Springs, AR. 72543

RE:     Catherine Dew
DOB:   07/12/1958

Dear Dr. Bivins:

I saw your nice patient, Catherine Dew, in the office today. As you know, she has an extremely large ventral hernia.

Her past surgical history is extensive with at least seven major abdominal surgeries, most recently in 2012 at the V. A. Hospital.

Because of the extensive nature of her surgeries and due to the large nature of her hernia, I feel that attempting to repair this presents too high of a risk for her. I feel the complication rate would be high and the risk of recurrence of the hernia would be extremely high as well. She is not having any obstructive symptoms and the likelihood of incarceration or strangulation is low.

She and I have elected not to pursue surgical repair. I did offer to refer her to Dr. Cone at UAMS as another opinion, but she did not want to do this at this time.

If you have any questions, please do not hesitate to contact me, but thank you for allowing me to see this very nice patient.

Sincerely,

Mark R. Gibbs M.D.

Electronically Signed by: MARK R GIBBS, MD
MRG/Jm

---

EXHIBIT C **COPY**

# Area Agency on Aging

3998 Harrison Street • Post Office Box 2637 • Batesville, Arkansas 72503
870-612-3000 • 1-800-382-3205 • Fax 870-793-3971
www.wraaa.com

May 21, 2013

Davidson Law Firm
P.O. Box 4046
Batesville, AR 72503

RE: Catherine Dew

Dear Sir/Madam,

As requested, the following information is provided on Ms. Catherine Dew.

Ms. Dew was scheduled to work 4 hours per day, Monday through Friday. She missed 90 days of work from September 18, 2012 until her resignation on February 22, 2013. At that time, she earned $10.50 per hour. Since she was a part time employee she did not earn any benefits.

If I can be of further assistance, please feel free to contact me.

Sincerely,

Leigh Ann Chronister
Human Resources Director



Area Served: Cleburne, Fulton, Independence, Izard, Jackson, Sharp, Stone, Van Buren, White and Woodruff Counties.
White River Area Agency on Aging, Inc. is an equal opportunity provider, and employer.
A 501 (c)(3) Tax Exempt Non-Profit Organization



EXHIBIT D



**Department of Veterans Affairs**
Office of Regional Counsel
2200 Fort Roots Drive, Bldg 5
North Little Rock, AR 72114
Phone (501)-257-4122
Fax (501)257-4130

<u>CERTIFIED MAIL – RETURN RECEIPT REQUESTED</u>
May 31, 2013

In Reply Refer To:  GCL 3154
Direct Line: (501) 257-4129

Mr. Scott Davidson
Davidson Law Firm
551 Boswell Street
P.O. Box 4046
Batesville, Arkansas 72503-4046

Re:  Administrative Tort Claims of Catherine and Steven Dew

Dear Mr. Davidson:

We acknowledge receipt of the above-captioned claims which were received by our office on
May 29, 2013.  Under federal law, the Department of Veterans Affairs (VA) has <u>six months</u>
from receipt of a claim during which time no lawsuit may be filed on the claim.  VA will
attempt to reach a decision during that period.  If VA is unable to render a determination
within six months, you may elect to file suit in federal district court or you may continue to
await an agency decision.  Once our investigation is completed, we will advise you of our
decision in writing.

Please note that Federal Tort Claims Act (FTCA) claims are governed by a combination of
federal and state laws.  Some state laws may limit or bar a claim or law suit.  VA legal staff
handling FTCA claims work for the federal government, and cannot provide advice regarding
the impact of state laws or state filing requirements.  The attorney assigned to investigate this
claim is **Gayle Sipes**.  If you have any questions, you may contact her at **501-257-4129.**

We would like to remind you that pursuant to the provisions of 28 U.S.C. § 2678 you are only
entitled to 20% of any settlement reached during the administrative review of these claims.

This office will obtain all VA records related to this administrative tort claim.  Information
from non-VA sources is important in evaluating the claim.  Pursuant to 28 C.F.R. §14.4, we
request that you provide the information requested below.  Your cooperation in providing this
additional information is appreciated.

## We ask that you provide the following for <u>both of your clients:</u>

a.   A signed <u>Release of Information form</u> (enclosed).  Provide the names of any physicians or
     <u>non-VA facilities</u> where your client was treated for any condition related to the incident stated
     in your claim.  This information will assist us in the investigation of your claim.  Please have
     your client sign and date the form.

*EXHIBIT "C"*

b.  *A written report from any health care provider at *non-VA facilities* who has treated your client for any condition related to the incident stated in the claim or has provided an opinion related to the allegations in this claim.  A report should describe the nature and extent of treatment, any degree of temporary or permanent disability, the prognosis, period of hospitalization, and any diminished earning capacity.  In the alternative, copies of medical records may be sent.

c.  *Itemized bills* for medical and hospital expenses incurred, or itemized receipts of payment for such expenses.

d.  A statement of *expected expenses* for treatment if the prognosis reveals the necessity for future treatment.

e.  If the claim includes loss of time from employment, provide a written statement from the employer showing actual *time lost from employment*, whether your client was a full or part-time employee, your annual salary or hourly wage, and the wages or salary actually lost.

f.  Provide your client's *employment history* for the past five years, including salary, employer, and job title.

g.  Provide copies of your client's *income tax returns* for the past three years.

h.  Specify *any and all income received* by your client from Social Security, private pension, disability compensation, and all other sources of compensation received prior to the injury or that is anticipated by reason of the injury.

Please forward *any other evidence or information* which may have a bearing on the responsibility of the United States for the damages claimed.

With Kindest Regards,

KALA BUNTEN-JACKSON
Paralegal

Enclosure

**VA** | U.S. Department
of Veterans Affairs

**Office of the General Counsel**                              In Reply Refer To:
Washington DC 20420                    DEC 1 9 2013

CERTIFIED MAIL

Scott Davidson, Esq.                                          GCL#3154
Davidson Law Firm
551 Boswell Street
P.O. Box 4046
Batesville, Arkansas 72503-4046

Subject:  Administrative Tort Claims of Catherine and Steven Dew

Dear Mr. Davidson:

This office has completed our investigation of the above-referenced matters under the Federal Tort Claims Act (FTCA), and the claims are hereby denied as not being amenable to administrative resolution.

Further action on this matter may be instituted in accordance with the FTCA, sections 1346(b) and 2671-2680, title 28, United States Code (U.S.C.), which provides that a tort claim that is administratively denied may be presented to a federal district court for judicial consideration. Such a suit must be initiated within six months after the date of mailing of this notice of final denial as shown by the date of this letter (section 2401(b), title 28, U.S.C.). If such a suit is filed, the proper party defendant would be the United States, not VA. Alternatively, a request for reconsideration of this claim by this office may be filed by:  (1) mail to Office of General Counsel (021B), 810 Vermont Avenue, N.W., Washington, DC 20420; (2) fax to 202-273-6385; or (3) e-mail to OGC.torts@mail.va.gov.  VA must receive such a request within six months of the date of mailing of this notice of final denial as shown by the date of this letter.  If a request for reconsideration is made, VA shall have six months from receipt of that request during which the option to file suit in an appropriate federal court under 28 U.S.C. 2675(a) is suspended.

Please note that FTCA claims are governed by a combination of federal and state laws. Some state laws may limit or bar a claim or law suit.  VA legal staff handling FTCA claims work for the federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely yours,

Kathryn Simpson
Kathryn Simpson
Deputy Assistant General Counsel

EXHIBIT "D"